STATE OF MAINE *vs.* JAMES V. CALIENDO.

Oxford.        Opinion, March 16, 1939.

*Robert T. Smith*, County Attorney for State.
*Aretas E. Stearns*, for respondent.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

STURGIS, J.   At the June Term, 1938, of the Superior Court for Oxford County the respondent was tried for arson and found guilty. After verdict, his motion for a new trial, addressed to the presiding Justice, was denied and his appeal from that ruling is before the Law Court. The question presented is whether upon all the evidence the jury were warranted in finding beyond a reasonable doubt that the respondent was guilty of the crime charged in the indictment.

The printed case brought forward with the appeal shows that just before one o'clock in the morning of March 26, 1938, fires were discovered in the barroom and kitchen which respondent operated in connection with his barber shop on the street floor of the three-story building situated on Bridge Street in Mexico and owned by Annie Caliendo, his wife. The second floor of the building was let to a tenant for dwelling-house purposes. The rooms in the upper story were not in use at the time of the fire.

When the firemen arrived and forced their way into the building with a fire hose, they found a beer case partially filled with rubbish, cloths and towels burning in the barroom and a similar case containing burlap, towels and charred paper on fire in the kitchen which adjoined the barroom. An examination of the cases and their contents disclosed that they had been saturated with range oil or kerosene and beside one there was oily glass from a broken milk bottle. The fire in the kitchen had burned through the floor and into the timbers below, and the woodwork against which the case in the barroom was driven when the stream from the fire hose struck it

was blazing. The fires were promptly extinguished, however, and no great damage to the building or its contents resulted.

It is clearly apparent from the evidence that the fires had not been burning for any great length of time before they were discovered and the alarm given. The saturated beer cases and the rubbish in them were highly inflammable and must have burned rapidly when ignited. No candle, fuse, contrivance or device of any sort designed to produce delayed ignition was found in or about the beer cases or the premises. The tenant and his wife, who lived in the second floor rent, returned from the pictures just after midnight, passed by one of the windows in the respondent's barroom as they went up the outside stairs at the back of the building, and saw no signs of fire. About twenty minutes later, as this tenant sat in his bedroom smoking, he heard a noise downstairs and, becoming uneasy, went out into the kitchen to investigate, but heard nothing and returned. In another twenty minutes, he smelled oil burning and again going into the kitchen was met with a spout of smoke coming from below. Waking his wife, they hurried down the outside stairs over which they had come up an hour earlier and as they passed the barroom window saw flames inside rising to the ceiling. He ran to the nearest fire-box and rang in an alarm. His wife sought refuge at the home of a neighbor.

The respondent, through his counsel, conceded that the fires were of incendiary origin but denies that he directly or indirectly set them. He is supported by witnesses for the prosecution in his assertion that he left his shop and barroom just before midnight and practically an hour before the fire broke out, and at that time neither of the oil-saturated beer cases of rubbish were in the places where they were found by the firemen or on fire. All through the evening, patrons had been in and about both the barber shop and the barroom, and at no time was he there alone with opportunity to place and prepare the cases. He rode home from the shop in his truck taking one Ramsey, who was in there when he closed up, to the corner of the street on which he lived and then he drove directly to his own house. His departure for and his arrival at his home is verified by an apparently credible and intelligent witness who was passing the barber shop when he and Ramsey rode away and, hav-

ing travelled by a short and direct route, was at the respondent's driveway when he rode in there, got out of his truck and went up over the steps to his back door. The respondent's daughter, a school teacher, heard her father drive into the yard with his truck, come into the house and go upstairs. Being unable to retire on account of the illness of a young nephew, she was up and about the house, heard her father snoring and is positive that he did not leave the house after he came in. A little after one o'clock, receiving a telephone message informing her that the shop and barroom were on fire, she notified her father, who immediately dressed and accompanied her down to the shop.

The evidence against the respondent is purely circumstantial. No one saw him at or near the building which was burned after he closed up his barber shop and left for home, nor is there any direct proof that he left his house again until he and his daughter came down to the fire in response to the telephone call. No more is it shown that the respondent at any time possessed any means, contrivance or device for setting fires by delayed ignition. He did have the only keys known to be in existence which fitted the door of the barber shop and permitted entrance to all of the rooms on the street floor of the building. The back door was locked and the key had been lost. He had locked the front door when he left the shop just before midnight and took the key away with him. The firemen, when they arrived, found one of the windows in the barroom locked and it was broken open when the hose was run into the room. No one seems to know whether the other barroom window was locked or not. One of the windows in the kitchen was fastened with a bar diagonally across the upper sash and the other window in that room was partially boarded up. There was a window opening from the outside into a toilet, of rather small dimensions but large enough for a person to crawl through as had been done on one occasion before the fire when the store was broken into. Although ready access from this toilet to the barroom and kitchen was available, it does not appear that this window was locked. The evidence on this angle of the case establishes only that the respondent, through his possession of the key to the front door, had access to the premises where the fire started and equal opportunity with others to enter the building through unfastened windows.

There is evidence in the case tending to show that the respondent had overinsured his personal property in the barber shop and adjoining rooms and that the insurance carried by his wife on her building was also somewhat excessive; also that the respondent's business was not profitable at that time of the year. This evidence was admissible to establish motive, and on a charge of arson based on circumstantial evidence, is of significance in determining the guilt or innocence of the accused. *State* v. *Watson*, 63 Me., 128, 136; *Commonwealth* v. *Hudson*, 97 Mass., 565; Underhill's Crim. Ev., Sec. 563. Proof of motive, however, does not alone establish guilt. *State* v. *Ruckman*, 253 Mo., 487, 161 S. W., 705; *State* v. *Cohn*, 9 Nev., 179; II Wharton's Crim. Ev. (10th Ed.), 1646.

The State called the respondent's barmaid who testified that he called on her before the trial, accused her of falsely circulating stories that he had threatened to set the fire, and upon her denial of his charge, advised her to keep away from the trial by leaving town if necessary, and if she did anything out of the way to hurt him, the boys would be after her. What boys he referred to is not made to appear. And except as she repeated the advice and threat of the respondent, the barmaid gave no damaging testimony against him. His fears as to her ability and willingness to furnish evidence for the State were apparently groundless but his conduct, if the jury believed the barmaid's story, remains an incriminating circumstance which may well have weighed against him in their minds. Any statement or conduct of a person indicating a consciousness of guilt, where at the time or thereafter he is charged with a crime, is admissible against him on his trial. Under this rule, it is held that proof that the accused has attempted to procure the absence of witnesses for the State by threats of violence or otherwise, though not conclusive, is a significant circumstance to be weighed by the jury. It is in the nature of an admission of guilt. *Collins* v. *Com.*, 75 Ky., 271; *Com.* v. *Smith*, 162 Mass., 508, 39 N. E., 111; *State* v. *Mathews*, 202 Mo., 143, 100 S. W., 420; *Adams* v. *People*, 9 Hun. (N. Y.), 89; *State* v. *Little*, 174 N. C., 793, 94 S. E., 97; *State* v. *Manley*, 82 Vt., 556, 74 A., 231; Underhill's Crim. Ev. (3rd Ed.), Sec. 207.

The State also introduced without objection proof that on several previous occasions fires had broken out in buildings owned

by the respondent and his wife and insurance had been paid on the losses. These incidents, we are convinced, had no real or rational relation to the fires involved in this prosecution and should have been excluded if objection had been made. No evidence of probative value tends to show that the respondent was responsible for the earlier fires or even that they were of incendiary origin. The weight of evidence intrinsically destitute of probative value is not enhanced by its admission without objection. There was no legitimate purpose for which the jury could consider this evidence offered by the prosecution. *Brock* v. *State*, 26 Ala., 104; *State* v. *Raymond*, 53 N. J. L., 260, 21 A., 328; *People* v. *Fitzgerald*, 156 N. Y., 253, 50 N. E., 846; I Wharton's Crim. Ev. (10th Ed.), Secs. 30–38.

Arson is and always has been regarded as one of the most serious offenses known to the criminal law. It is a crime which is rarely committed in the open and in the presence of witnesses, is usually most difficult to prove, and often can only be established by circumstantial evidence. The State is bound to prove all the elements of the crime beyond a reasonable doubt. If it relies solely on circumstantial evidence to establish the guilt of the accused, as in all other felonies, it must prove each and every circumstance upon which a conviction must rest beyond a reasonable doubt, and the evidence must be sufficient to exclude beyond a reasonable doubt every other reasonable hypothesis except that of the respondent's guilt. *State* v. *Richards*, 85 Me., 252, 255, 27 A., 122; *State* v. *Terrio*, 98 Me., 17, 56 A., 217; *State* v. *Cloutier*, 134 Me., 269, 186 A., 604.

In this case, the *corpus delicti* of the arson is clearly established. The kitchen floor and the timbers below, as also some of the partitions, were set on fire. It is not necessary, to constitute arson, that any of the building should be consumed. If any part, however small, be ignited, the offense is committed. *State* v. *Taylor*, 45 Me., 322. The beer cases and their contents where the fire started, their location in the barroom and kitchen, and their saturation with oil leave no doubt that the burnings were not accidental but wilfully and maliciously caused by a human agency. As already stated, the respondent concedes that the fire was incendiary.

Motive is also sufficiently established and, along with it, that the respondent had a possible but not the exclusive opportunity to commit the crime. Proof that the fire was incendiary, and these cir-

cumstances, coupled with the evidence of conscious guilt found in the respondent's advice and threats to his barmaid, are consistent with his guilt and raise a strong suspicion of it, but mere suspicion, however strong, will not supply the place of evidence and warrant a conviction. *State* v. *Richards*, supra; *State* v. *Morney*, 196 Mo., 43, 93 S. W., 1117; Underhill's Crim. Ev. (3rd), Sec. 18.

The link which is lacking in the chain of circumstantial evidence which the State has woven around the respondent is proof that he was present in his wife's building when it was fired and participated in the burning. Other circumstances proven do not point irresistibly and beyond a reasonable doubt to that fact. The presumption of innocence with which he is clothed has not been overcome by the prosecution.

*Appeal sustained.*