## STATE of Maine

v.

## Gerald TEMPESTA.

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 19, 1992.

Decided Dec. 24, 1992.

Janet T. Mills, Dist. Atty., Patricia Reynolds Regan, Asst. Dist. Atty., Auburn, for the State.

Arthur J. Greif, Isaacson & Raymond, Lewiston, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

COLLINS, Justice.

Gerald Tempesta appeals from judgment entered in Superior Court (Androscoggin County, *Alexander, J.*) affirming the judgment of the District Court (Lewiston, *Beliveau, J.*) convicting him of driving to endanger in violation of 29 M.R.S.A. § 1314 (Pamph.1991) for splashing snow slush onto a police cruiser and two other vehicles.[1] Because we agree with Tempesta's

---

**1.** 29 M.R.S.A. § 1314 (Pamph.1991) reads in relevant part:

A person is guilty of driving to endanger if, with criminal negligence, as defined in Title 17–A, he drives a motor vehicle in any place in such a manner that a person, including the driver or passenger in the motor vehicle being

assertion that the State failed to prove that his splashing snow slush was criminally negligent, we vacate the conviction.

The court heard the following evidence: At about 8:45 AM on Sunday, March 24, 1991, Tempesta was driving north in the left-hand, north-bound lane of Minot Avenue in Auburn. Snow from the previous night's storm covered the road in varying depths. Tempesta was driving within the speed limit when his vehicle entered an area of "heavier" slush. Tempesta testified that he did not move to the right-hand lane in which two tracks had been cleared by previous traffic because he feared that a car was traveling next to the right rear of his vehicle outside his range of vision, in the area typically referred to as his "blind spot."[2] His vision in the side-view mirror was obscured by moisture and in the rear-view mirror was blocked by the load in the bed of the pickup he was driving. Because Tempesta was traveling in the slush-covered left-hand lane, his vehicle splashed slush onto the windshields of three oncoming vehicles, one of which was a police cruiser. This splashing caused the drivers of those vehicles to momentarily lose control of their vehicles.

The State charged that Tempesta was criminally negligent for causing "snow to be splattered on oncoming vehicles obstructing views and almost causing an accident." After hearing the testimony of Tempesta and Officer Page, the District Court convicted Tempesta and sentenced him to a 30–day loss of license and a $100 fine. The Superior Court affirmed the conviction.

■ In reviewing challenges to the sufficiency of the evidence, we review the evidence in the light most favorable to the State to decide whether a fact-finder rationally could find every element of the criminal charge beyond a reasonable doubt. *State v. Philbrick,* 551 A.2d 847, 852 (Me. 1988). Because the Superior Court acts as an intermediate appellate court, we review

driven, or the property of another is endangered.

**2.** Auburn Police Officer Page, whose cruiser's windshield was splashed, testified that there was

directly the action of the District Court. *See City of Portland v. Gemini Concerts, Inc.,* 481 A.2d 180, 181 (Me.1984).

■ To be convicted of driving to endanger, the operator of a motor vehicle must drive "with criminal negligence." 29 M.R.S.A. § 1314 (Pamph.1991); *see also State v. Davis,* 398 A.2d 1218 (Me.1979) (holding earlier version of § 1314 without express "criminal negligence" language had to be read to include the essential element of "criminal negligence"). Criminal negligence is defined in 17–A M.R.S.A. § 35(4) (1983) which reads:

A. A person acts with criminal negligence with respect to a result of his conduct when he fails to be aware of a risk that his conduct will cause such a result.

. . . . .

C. For purposes of this subsection, the failure to be aware of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to him, must involve a *gross* deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

17–A M.R.S.A. § 35(4) (1983) (emphasis added). Like civil negligence, criminal negligence is defined in terms of unreasonable risk created by the actor's conduct when judged objectively. *State v. Crocker,* 435 A.2d 58, 65 (Me.1981) (interpreting identical definition of criminal negligence in precursor to 17–A M.R.S.A. § 35(4)). In order to find criminal negligence, however, a factfinder must determine not only that the defendant "lacked ordinary care" or that he failed to "provide against the ordinary occurrences of life," but also that "his conduct manifested a higher degree of carelessness, going beyond 'the civil definition of negligence.'" *Id.* at 65–66.

■ The evidence before the District Court was insufficient to establish that

no car to Tempesta's right. On cross-examination, however, he admitted that his vision had been partially blocked by Tempesta's vehicle. The court found both witnesses to be credible.

Tempesta's conduct was a *gross* deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation. Tempesta was driving within the legal speed limit in a legal lane. Even if no car were actually to his right, Tempesta's concern that a vehicle was in his blind spot could justify his choosing to splash the oncoming vehicles rather than chance hitting another vehicle. To the extent that Tempesta's failure in the circumstances of this case to keep his mirrors clear contributed to his difficulty in determining whether the right-hand lane was occupied, this failure does not reach the level of criminal negligence. Even viewing the evidence in a light most favorable to the State, Tempesta's conduct was not criminally negligent.

The entry is:

Judgment of conviction vacated. Remanded to the Superior Court with instructions to remand to the District Court for entry of a judgment of acquittal.

All concurring.