1999 ME 29

**STATE of Maine**

v.

**Robert DAY Sr.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 13, 1999.

Decided Feb. 16, 1999.

Geoffrey A. Rushlau, Dist. Attorney, Patrica A. Mador, Asst. Dist. Atty., Wiscasset, for State.

William M. Avantaggio, Howard & Bowie, Damariscotta, for defendant.

Before WATHEN, C.J. and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Robert Day appeals from a judgment entered in the Superior Court (Lincoln County, *Atwood, J.*) following his conviction for refusing to submit to arrest or detention in violation of 17–A M.R.S.A. § 751–A (Supp. 1998).[1] Day contends that the court erred when it instructed the jury on both the defense for refusing to submit to arrest, section 751–A(2)(A),[2] and inconsistent provisions of 17–A M.R.S.A. § 108(1–A) (Supp.1998)[3] re-

---

1. Title 17–A M.R.S.A. § 751–A provides in part:
   1. A person is guilty of refusing to submit to an arrest or a detention if, with the intent to hinder, delay or prevent a law enforcement officer from effecting the arrest or detention, that person:
      A. Uses physical force against the law enforcement officer; or
      B. Creates a substantial risk of bodily injury to the law enforcement officer.

2. Title 17–A M.R.S.A. § 751–A(2)(A) states in part:

2. It is a defense to prosecution under this section that:
   A. The person knew that the law enforcement officer knew that the arrest or detention was illegal . . . .

3. Title 17–A M.R.S.A. § 108(1–A) states:
   1–A. A person is not justified in using nondeadly force against another person who that person knows or reasonably should know is a law enforcement officer attempting to effect an arrest or detention, regardless of whether the arrest or detention is legal. A person is justi-

lating to the use of force in defense of a person. Because the instruction on the first sentence of section 108(1–A) was inconsistent with the defense provided in section 751–A(2)(A), we vacate the conviction.

[¶ 2] On the evening of November 24, 1997, Robert Day returned home to find his wife, Carol Day, drinking with friends. Robert and Carol began to argue over Carol's drinking. Angered by his dinner options, Robert threw a plate of food onto the floor. Soon their twenty-two-year-old daughter, Vickie Austin, joined the verbal fray. In the heat of the argument, Carol tackled Robert. As Vickie and Robert continued to argue, Carol went to a downstairs apartment and called 911 to report, falsely, that Robert had assaulted Vickie.

[¶ 3] The first officer to arrive was Jamie Wilson, a Waldoboro police officer, who was accompanied by a civilian. When Wilson arrived, Robert was upstairs, and Vickie and Carol were in the downstairs apartment. Wilson proceeded upstairs and informed Robert that he was not under arrest, but that he should leave the residence. The evidence indicates that Robert agreed and was preparing to leave with Wilson.

[¶ 4] Meanwhile, Rand Maker and Brendan Kane, officers with the Lincoln County Sheriff's Department, arrived on the scene. After speaking with Vickie and Carol, the officers decided to arrest Robert for domestic abuse. Just as Robert was preparing to leave the residence with Wilson. Maker went upstairs and, after some discussion, announced that Robert was under arrest. In response to this announcement, Robert strenuously resisted the arrest. Ultimately, he was handcuffed and placed in a patrol car.

[¶ 5] Robert was charged with refusing to submit to arrest or detention pursuant to 17–A M.R.S.A. § 751–A, and tried before a jury. Instruction on the justification for refusing to submit to arrest was generated by (i) the evidence that Wilson had told Robert that he

could leave and not be arrested and (ii) other evidence by which the jury could infer that the Lincoln County Officers, knowing they did not have sufficient cause to arrest, may have induced Carol to claim, falsely, that Robert had assaulted her to give cause to support the arrest. Accordingly, the court instructed the jury that,

> [I]t is [a] defense to the prosecution of this crime if the defendant knew that the law enforcement officer knew that the arrest or detention was illegal. If you believe that sufficient facts have been introduced to raise a question as to whether the defendant knew that the law enforcement officer knew that the arrest or detention was illegal, then in order for the defendant to be convicted of this charge, the State must prove beyond a reasonable doubt either that the defendant in fact did not know that the officer or officers involved in effecting the arrest or detention knew that it was illegal, or that the officer or officers in fact did not know the arrest or detention was illegal.

The court then qualified the instruction as follows:

> Thus, the focus is not on whether or not the arrest or detention was in fact illegal. Instead, the focus must be [on] the knowledge of the defendant and the knowledge of the officer or officers. That's because under Maine law a person is not justified in using nondeadly force against another person [who] that person knows or reasonably believes to be a law enforcement officer, and who he knows is attempting to effect an arrest or detention, regardless of whether or not the arrest was in fact illegal.[4]

[¶ 6] The second part of the above instruction, based on the first sentence of section 108(1–A) was properly objected to by defense counsel. The jury returned a guilty verdict from which Robert has appealed.

---

fied in using the degree of nondeadly force the person reasonably believes is necessary to defend the person or a 3rd person against a law enforcement officer who, in effecting an arrest or detention, uses nondeadly force not justified under section 107, subsection 1.

4. The jury was actually instructed twice on this point, once in the body of instructions and again in response to a note from the jury requesting clarification of the charge. The quoted language is from the reinstruction. It does not differ materially from the original instruction.

[¶ 7]   Robert argues that the instructions created jury confusion by instructing the jury that, on the one hand, it was a defense to prosecution if the defendant knew that the officer knew the arrest was illegal but, on the other hand, a person is not justified in using nondeadly force to resist arrest.

[¶ 8]   We review jury instructions "as a whole to ensure that they informed the jury correctly and fairly in all necessary respects of the governing law." *State v. Daniels*, 663 A.2d 33, 36 (Me.1995) (citations omitted).   A jury instruction that "creates the possibility of jury confusion and a verdict based on impermissible criteria" is erroneous.   *State v. Rivers*, 634 A.2d 1261, 1263 (Me.1993).   "Such an error is harmless only if the court believes it highly probable that it did not affect the verdict."   *State v. Fitch*, 600 A.2d 826, 828 (Me.1991).

[¶ 9]   Section 751–A(2)(A) provides that it is a defense to prosecution for refusing to submit to arrest that, "[T]he person knew that the law enforcement officer knew that the arrest or detention was illegal ...." 17–A M.R.S.A. § 751–A(2)(A).   This defense is specific to the crime of refusing to submit to arrest.   *Id.* The first sentence of section 108(1–A), however, states that,

> A person is not justified in using nondeadly force against another person who that person knows or reasonably should know is a law enforcement officer attempting to effect an arrest or detention, regardless of whether the arrest or detention is legal.

17–A M.R.S.A. § 108(1–A).

[¶ 10]   This statement of the law is a qualification of the general law on physical force in defense of a person.   *Id.* It addresses justifications for charges such as assault, 17–A M.R.S.A. § 207 (Supp.1998), or other charges involving physical violence.

[¶ 11]   These two justification provisions are contradictory.   The first permits a person to use physical force against a law enforcement officer attempting to effect an arrest when the person knows that the officer knows that the arrest was illegal.   17–A M.R.S.A. §§ 751–A(1)(A) & (2)(A).   The sec-ond forbids the use of force against a law enforcement officer attempting to effect an arrest, without exception.   17–A M.R.S.A. § 108(1–A).

[¶ 12]   By instructing the jury on the first sentence of section 108(1–A), the court in essence nullified the statutory defense to refusing to submit to arrest provided by section 751–A(2)(A).   The court first told the jury that there were circumstances when resisting arrest with force was justified and then told the jury that force was never permitted when resisting arrest.

[¶ 13]   Statutory language must be construed "to avoid absurd, illogical, or inconsistent results."   *Fullerton v. Knox County Comm'rs*, 672 A.2d 592, 594 (Me. 1996).   Likewise, a statute addressing a specific issue will be given precedence over a statute of more general application.   *South Portland Civil Serv. Comm'n v. City of South Portland*, 667 A.2d 599, 601 (Me.1995).

[¶ 14]   Recognizing these doctrines of statutory interpretation, the Legislature, in enacting section 751–A with its specific defenses in 1997,[5] certainly did not intend that those protections for arrestees be negated by the general language in section 108(1–A).

[¶ 15]   When the law provides for a defense specific to the charged offense, the court cannot instruct the jury on an inconsistent law of general application which nullifies the specific defense.   Instructing in accordance with the first sentence of section 108(1–A) denied the defendant a defense authorized by the Legislature.

The entry is

Judgment vacated.   Remanded for further proceedings consistent with this opinion.

---

5.   P.L.1997, ch. 351, § 3.