1999 ME 185

**STATE of Maine**

v.

**Patrick DOYON.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 28, 1999.

Decided Dec. 16, 1999.

David W. Crook, District Attorney, Andrew Benson, Asst. Dist. Atty., Augusta, for State.

Walter F. McKee, Lipman & Katz, P.A., Augusta, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Patrick Doyon appeals from the judgment of conviction entered in the Superior Court (Kennebec County, *Studstrup, J.*) on a jury verdict of guilty of aggravated assault pursuant to 17-A M.R.S.A. § 208 (1983 & Supp.1999).[1] Doyon asserts that the court erred when it refused to instruct the jury on the defense of duress and when it denied his motion for a new trial. We disagree and affirm.

[¶ 2] Doyon was charged with the aggravated assault of William Smith. He met Smith in a bar during the ice storm of January 1998. At the bar, he introduced himself to Smith and the two women accompanying Smith. While at the bar, Doyon repeatedly asked the women to join him outside. Smith told Doyon to stop bothering them.

[¶ 3] Smith and Doyon both testified at trial. Smith testified to the following: Smith took a ride with Doyon because Doyon wanted to get some money. They drove for a while and then Doyon pulled his car to the side of the road and chided Smith for embarrassing him in front of the women. Doyon pulled out a knife and stabbed Smith in both hands as he put them up in defense. Smith tried to escape by exiting Doyon's car, but Doyon grabbed him. He swung the knife at Smith fifteen times stabbing Smith in the back and the buttocks. Smith threw Doyon on the ground and kicked him multiple times.

[¶ 4] Doyon testified to the following: Smith asked Doyon for a ride. When Doyon realized that Smith had directed him to a house to buy heroin, Doyon told Smith that he wanted nothing to do with heroin. Smith became upset and with a "crazy look on his face," he hit Doyon. They got out of the car and Smith came at Doyon with a knife. They struggled for the knife and it sliced Doyon's knuckle. Smith's repeated kicking of Doyon eventually broke Doyon's thumb. In an attempt to kick Doyon, Smith fell to the ground. At this point, Doyon grabbed the knife that had fallen under the car and swung at Smith. Doyon further testified that he thought Smith was going to kill him. After the altercation, Doyon went home and the police found him hiding in his closet.

[¶ 5] Doyon requested jury instructions on duress, competing harms and self-defense. The trial court instructed on self-defense concluding that duress was not an appropriate instruction. The jury convicted Doyon of aggravated assault.[2]

[¶ 6] Doyon then sought a new trial on the basis of newly discovered evidence. A

---

1. The aggravated assault statute provides:
   1. A person is guilty of aggravated assault if he intentionally, knowingly, or recklessly causes:
      A. Serious bodily injury to another; or
      B. Bodily injury to another with use of a dangerous weapon; or
      C. Bodily injury to another under circumstances manifesting extreme indifference to the value of human life. Such circumstances include, but are not limited to, the number, location or nature of the injuries, the manner or method inflicted, or the observable physical condition of the victim.

2. Aggravated assault is a Class B crime. 17-A M.R.S.A. § 208 (1983 & Supp.1999).

2. The defendant's conviction for aggravated assault constituted a violation of probation for his prior conviction of tampering with a witness. The defendant was sentenced to two and a half years commitment for violating his probation. The defendant was also sentenced to a consecutive seven year commitment, all but three suspended for the aggravated assault conviction. The two cases were consolidated into this appeal.

witness called Doyon's attorney claiming to have read an article in the *Kennebec Journal* recounting the Doyon trial. At the hearing on Doyon's motion for a new trial, the witness, Michael James, testified that two weeks after the ice storm, Smith described his stabbing and his story then differed from the story he recounted at trial. Smith told James that "two guys jumped him and tried to steal his money" while he was outside the bar counting his money. Smith never named Patrick Doyon as his assailant. The court denied Doyon's motion for a new trial concluding that a new trial would not have altered the prior trial's result. This appeal followed.

## I. JURY INSTRUCTIONS

[¶ 7] We review the trial court's denial of a request for jury instructions for prejudicial error. *See State v. Wright,* 662 A.2d 198, 202 (Me.1995). A defendant is entitled to an instruction when the evidence is "sufficient to make the existence of all the facts constituting the defense a reasonable hypothesis for the factfinder to entertain." *See State v. Case,* 672 A.2d

586, 589 (Me.1996). A defendant, however, is not entitled to a jury instruction that may confuse the jury. *See State v. Day,* 1999 ME 29, ¶ 8, 724 A.2d 1245, 1247 (noting that a jury instruction that creates the possibility of confusion is erroneous). The trial court did not err when it refused to instruct the jury on duress because in this case a defense of duress was not a reasonable hypothesis for the jury to consider. *See Case,* 672 A.2d at 589.

[¶ 8] A duress instruction is appropriate when a defendant demonstrates that he was compelled to act by the threat of imminent death or serious bodily injury or by force. *See* 17–A M.R.S.A. § 103–A (1983 & Supp.1999);[3] *State v. Larrivee,* 479 A.2d 347, 350 (Me.1984). Here, the facts logically supported a self-defense instruction, pursuant to 17–A M.R.S.A. § 108 (1983 & Supp.1999),[4] but not a duress instruction. Duress would have been appropriate if Doyon was compelled to attack Smith. That did not happen here. A duress instruction would have misled and confused the jury. *See Day,* 1999 ME 29, ¶ 8, 724 A.2d at 1247 (noting that instruc-

---

**3.** The duress statute provides in relevant part:

1. It is a defense that, when a defendant engages in conduct which would otherwise constitute a crime, he is compelled to do so by *threat of imminent death or serious bodily injury* to himself or another person or because he was compelled to do so by force.

2. For purposes of this section, compulsion exists only if the force, threat or circumstances are such as would have prevented a reasonable person in defendant's situation from resisting the pressure.

3. The defense set forth in this section is not available:

A. To a person who intentionally or knowingly committed the homicide for which he is being tried;

B. To a person who recklessly placed himself in a situation in which it was reasonably probable that he would be subjected to duress; or

C. To a person who with criminal negligence placed himself in a situation in which it was reasonably probable that he would be subjected to duress, whenever criminal negligence suffices to establish culpability for the offense charged.

17–A M.R.S.A. § 103–A (1983 & Supp.1999).

**4.** The self-defense statute states in relevant part:

1. A person is justified in using a reasonable degree of nondeadly force upon another person in order to defend himself or a 3rd person from what he reasonably believes to be the imminent use of unlawful, nondeadly force by such other person, and he may use a degree of such force which he reasonably believes to be necessary for such purpose. However, such force is not justifiable if:

A. With a purpose to cause physical harm to another person, he provoked the use of unlawful, nondeadly force by such other person; or

B. He was the initial aggressor, unless after such aggression he withdraws from the encounter and effectively communicates to such other person his intent to do so, but the latter notwithstanding continues the use or threat of unlawful, nondeadly force; or

C. The force involved was the product of a combat by agreement not authorized by law.

17–A M.R.S.A. § 108 (1983 & Supp.1999).

tions that mislead or confuse the jury are erroneous). Thus, the trial court did not err when it refused to instruct the jury on duress.

## II. MOTION FOR A NEW TRIAL

[¶ 9] Doyon argues that the trial court erred in denying his motion for a new trial because the newly discovered evidence would have changed the result of the trial. To warrant a new trial, Doyon must establish, by clear and convincing evidence, that the newly discovered evidence is such that: (1) the evidence will probably change the result of a new trial, if granted; (2) the evidence has been discovered since trial; (3) the evidence could not have been discovered before the trial with due diligence; (4) the evidence is material to the issue; and (5) the evidence is not merely cumulative or impeaching, unless the impeachment would have resulted in a different verdict. *See State v. Dechaine*, 630 A.2d 234, 236 (Me.1993).

[¶ 10] The possibility or chance of a different verdict is insufficient to warrant a new trial. *See id.* Doyon must show that a probability exists that the new trial will result in a different verdict. *See id.; State v. Lewis*, 373 A.2d 603, 611 (Me.1977). We defer to the trial court's determination of weight and credibility and review the trial court's denial of a motion for a new trial for clear error. *See Dechaine*, 630 A.2d at 236. The trial court did not err when it denied Doyon's motion; rather, it properly considered all the criteria necessary to determine whether a new trial was warranted. *See Dechaine*, 630 A.2d at 236.

The entry is:

Judgment affirmed.